UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ADMIR MAGLAJLIC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO: _____ |
| vs. ) | |
| ) | |
| ADAPTIVE MICRO-WARE, INC., ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.    STATEMENT OF THE CASE**

1. Plaintiff, Admir Maglajlic (hereinafter "Mr. Maglajlic" or "Plaintiff"), brings this Complaint against Defendant Adaptive Micro-Ware, Inc. for violations of the following federal and state laws: Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (hereinafter "FLSA"); FICA Violations, 26 U.S.C. § 3101 and § 3102, et seq.; Indiana's Minimum Wage Statute, I.C.§ 22-2-2-4; Indiana's Wage Claim Act, I.C.§ 22-2-5-2; and, Indiana's common law claim for Unjust Enrichment.

**II.    PARTIES**

2. Mr. Maglajlic's permanent residence is 2319 Point West Drive, Apt. 2B Fort Wayne, IN 46808, which is within the geographical boundaries of the Northern District of Indiana.

3. Adaptive Micro-Ware, Inc., ("AMW") is a domestic, for profit corporation, whose principle place of business is 6917 Innovation Boulevard, Fort Wayne, IN 46818.

2048797

1

### III.     JURISDICTION AND VENUE

4.     For all relevant times, Mr. Maglajlic is a "employee" within the meaning of 29 USC § 203(e)(1).

5.     For all relevant times, AMW is, and/or was, an "employer" within the meaning of 29 USC § 203(d).

6.     For all relevant times, AMW was engaged in either interstate commerce or in the production of goods for commerce that produced at least $500,000 per year in gross sales, thereby causing Plaintiff to be eligible for FLSA protection. This Court has jurisdiction over the Plaintiff's claims as the FLSA claims raise a question of federal law, 29 § 201 et seq.

7.     Pursuant to 28 U.S.C. § 1391, venue is proper in this Court for this cause of action because: 1) the Plaintiff resides in Allen County, Indiana; 2) Defendant AMW's principle place of business is within Allen County, IN; and 3) all events, transactions and occurrences concerning this matter have arisen in the geographical purview of the Northern District of Indiana.

8.     The Court has supplemental jurisdiction over Plaintiffs' Indiana law claims, which have a common basis in fact with Plaintiffs' FLSA claim and allegations of FICA violations.

### IV.     FACTUAL ALLEGATIONS

9.     Plaintiff incorporates herein by reference paragraphs 1 through 8 above.

10.     Until October 6, 2017, Mr. Maglajlic had been an employee of AMW since approximately 2005.

11.     For the duration of his employment with AMW, Mr. Maglajlic is regularly working forty hours per week or more.

12.     In 2013, Mr. Maglajlic earned approximately $27.40 per hour. He received a W2 reflecting total wages of $45,644.70 with associated withholdings. Attached hereto as Exhibit 1 is

a true and accurate copy of the 2013 W2 statement issued to Mr. Maglajlic by AMW.

13. By the end of 2013, AMW failed to fully compensate Mr. Maglajlic for his services through that calendar year. More specifically, Mr. Maglajlic should have earned approximately $57,000 in 2013 wages for all of the full time work performed. Instead, he received only $45,644.70 in gross wages, a difference of approximately $11,356.00.

14. For years thereafter, AMW represented, through its President and Owner, Robert "Bob" Kniskern., that AMW would honor its commitment for Mr. Maglajlic's wages earned. But, that the actual payment of wages for work incurred would depend on AMW's cash flow based on payments received from its customers.

15. At all relevant times, Mr. Maglajlic was still an 'employee' for purposes of all relevant state and federal laws.

16. But, under AMW's new illegal payroll policy, AMW shifted payment of wages earned by Mr. Maglajlic from a regular bi-weekly practice to a variable schedule that coincided with AMW's customers satisfying outstanding invoices.

17. In effect, payment of Mr. Maglajlic's wages became dependent on AMW's customers ability to pay for completed projects or order fulfillment.

18. This unusual payroll practice continued from 2013 through 2016.

19. In 2014, Mr. Maglajlic earned approximately $27.40 per hour. He received a W2 reflecting total wages of $55,389.50. Attached hereto as Exhibit 2 is a true and accurate copy of the W2 statement issued by AMW to Mr. Maglajlic representing wages earned in 2014.

20. Based on his 2014 earnings, AMW paid approximately $4,237.30 in FICA benefits in connection with Mr. Maglajlic's employment.

21. In 2015, Mr. Maglajlic earned approximately $27.40 per hour. He received a W2

reflecting total wages of $57,361.02.  Attached hereto as Exhibit 3 is a true and accurate copy of the W2 statement issued by AMW to Mr. Maglajlic representing wages earned in 2015.

22. Based on his 2015 earnings, AMW paid approximately $4,388.11 in FICA benefits in connection with Mr. Maglajlic's employment.

23. In or about 2016, AMW lost several key employees based, at least in part, due to these illegal payroll practices.  AMW and/or Robert Kniskern has previously been sued for payroll practices similar to those that Mr. Maglajlic now complains.  Thus, AMW had actual knowledge of these illegal payroll practices and schemes, yet it continued them nonetheless.

24. In 2016, Mr. Maglajlic's rate of pay increased to $33.65 per hour (an increase of approximately $6.25 per hour).  This pay rate increase corresponded with increased additional work responsibilities necessitated by the departure of employees based on the reasons stated above.

25. Regardless of AMW's purported pay increase to Mr. Maglajlic in 2016, AMW failed to pay Mr. Maglajlic for the 47 weeks between February 1, 2016 through December 22, 2016.

26. Barb Kniskern is married to Bob Kniskern and is AMW's accounting representative and bookkeeper.

27. In written correspondence to Mr. Maglajlic from Barb Kniskern, AMW admits that the payroll liability alleged herein is due and owing to Mr. Maglajlic.  A true and accurate copy of an email thread between Mr. Maglajlic and Barb Kniskern admitting to the liability of non-payment of wages is attached hereto as Exhibit 4.

28. Attached hereto as Exhibit 5 is a true and accurate copy of the W2 statement issued by AMW to Mr. Maglajlic representing wages earned in 2016.

29. Based on his 2016 earning, AMW paid approximately $2,554.72 in FICA benefits

in connection Mr. Maglajlic's employment.

30. In 2017, AMW attempted unilaterally to start 2017 wage payments "anew."

31. Notwithstanding this attempt at a clean slate, AMW failed to pay Mr. Maglajlic for 2 weeks from September 23, 2017 through October 6, 2017.

32. In total, Mr. Maglajlic is owed 49 weeks of wages.

33. Mr. Maglajlic resigned his employment from AMW on or about October 6, 2017.

## V.  LEGAL ALLEGATIONS

34. Plaintiff hereby incorporates paragraphs 1 through 33 as set forth herein.

### COUNT I: FAIR LABOR STANDARD ACT CLAIMS

35. AMW violated the Plaintiff's rights under FLSA by *inter alia:*

   a) failing to pay Plaintiff for all hours worked in violation of the minimum wage provisions required under 29 U.S.C. § 206.

   b) failing to pay Plaintiff minimum wage for all hours worked in violation of the minimum wage provisions required under 29 U.S.C. § 206.

36. Defendant AMW's violations of the minimum wage provision of FLSA were willful within the meaning of 29 U.S.C. § 255, thereby extending the applicable statute of limitations to three years. 29 U.S.C. § 255(a).

37. Pursuant to 29 U.S.C. § 216(b), Plaintiff's Consent to permit the undersigned to bring this lawsuit is attached hereto as Exhibit 6.

38. Plaintiff seeks all available damages, including unpaid wages, unpaid minimum wages, unpaid overtime compensation (if any), liquidated damages, injunctive relief, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which each may be entitled for Defendant's violations of the Fair Labor Standards Act. See 29 U.S.C. § 216.

## COUNT II: FICA VIOLATONS

39. Plaintiff reincorporates and re-allege paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. Plaintiff earned at least $150.00 and/or worked at least twenty (20) days in the calendar year in which he worked for Defendants.

41. Defendant violated the Plaintiff's Rights under The Federal Insurance Contributions Act ("FICA"), by failing to deduct or remit the applicable Social Security (FICA) taxes from the wages of Plaintiff for the entire period he worked for Defendant in violation of 26 U.S.C. § 3101 and § 3102.

42. Defendant is liable for any such taxes that it failed to deduct pursuant to 26. U.S.C. § 3102(b).

43. Through Defendant's actions and omissions as described above, Defendant violated the Plaintiff's rights under FICA by failing to report Plaintiff's earnings to the IRS and Social Security Administration.

44. By Defendant's failing to deduct or remit the FICA taxes associated with Plaintiff's labor, as required under FICA, Plaintiff has suffered and will continue to suffer harm for which he has no adequate remedy at law.

## COUNT III: VIOLATIONS OF INDIANA WAGE CLAIMS ACT

45. Plaintiff reincorporates and re-allege paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. Indiana's statutory framework for payment of overdue wages is straightforward. Employers who do not pay their employees in a timely manner owe not only the unpaid wages but also attorney fees and court costs: "Every such person, firm, corporation, limited liability company,

or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall be liable to the employee for the amount of unpaid wages. . . The court shall order as costs in the case a reasonable fee for the plaintiff's attorney and court costs." I.C. § 22-2-5-2 (emphasis added).

47. Under I.C. § 22-2-5-1, employees must be paid "at least semimonthly or biweekly, if requested," I.C. 22-2-5-1(a), and that "[p]ayment shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment," I.C. § 22-2-5-1(b).

48. If the Court determines that an employer did not act in good faith, the employer owes the employee two times the amount of wages due as liquidated damages. I.C. § 22-2-5-2.

49. Plaintiff has been separated from employment at AMW for more than 10 days.

50. Defendant has notice of Plaintiff's claim for the deficiency of the unpaid wages, admits that the wages are due and owing to Plaintiff, and has failed to timely fulfill Plaintiff's demand for satisfaction.

51. Defendant AMW has not been acting in good faith.  Thus, Defendant is liable to Plaintiff for twice the wages due as liquidated damages plus a reasonable attorney fee.

**COUNT IV: VIOLATIONS OF INDIANA MINIMUM WAGE ACT**

52. Plaintiffs reincorporate and re-allege paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. At all relevant times, Defendant has had more than four employees in a work week.

54. Defendant violated the Plaintiff's rights under the Indiana Minimum Wage Statute by failing to pay Plaintiff for all hours worked in violation of the minimum wage provisions. I.C. § 22-2-2-4.

55. By way of this Claim, Plaintiff seeks all available damages, including unpaid

wages, all available liquidated, punitive and/or treble damages, all attorney's fees, costs and expenses, plus any other damage to which each Plaintiff may be entitled pursuant to law.

## COUNT V: UNJUST ENRICHMENT

56.  Plaintiff reincorporates and re-allege paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.  To recover for unjust enrichment, Plaintiff must show that (1) he rendered a measurable benefit to the defendant at the defendant's express or implied request; (2) he expected payment from the defendant; and (3) allowing the defendant to retain the benefit without restitution would be unjust. *Neibert v. Perdomo*, 54 N.E.3d 1046, 1051 (Ind. Ct. App. 2016).

58.  This claim is also referred to as "quantum merit or quasi-contract" and exists where a contract remedy does not, in order to "require[] a party who has been unjustly enriched at another's expense to make restitution to the aggrieved party." Id. (quoting *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012)).

59.  A person who has been unjustly enriched at the expense of another is requires to make restitution to pay back the other. *Murray v. Conseco*, 2008 U.S. Dist. LEXIS 85500 (S.D. Ind. 2008).

## COUNT VI: FRAUDULENT MISREPRESENTATION

60.  Plaintiff reincorporates and re-allege paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.  From 2013 through Plaintiff's resignation from employment, AMW represented to Plaintiff that any issue related to payroll and wages owed to Plaintiff would be honored or that he would otherwise be made whole.

62. Based on AMW's subsequent refusal to honor Plaintiff's repeated requests for satisfaction and in light of the prior litigation concerning the same payroll practices, AMW knew its statements to Plaintiff were false at the time they were made.

63. Defendant made the statements with the intent to deceive Plaintiff, as it knew that full disclosure of the intent to not pay Plaintiff and/or negotiate a settlement with Plaintiff for his claims after the separation of employment would likely cause Plaintiff to leave AMW's employment sooner that it would otherwise prefer.

64. Plaintiff relied upon AMW's representations that he would be made whole for the wages he is owed, and he would have departed AMW's employment sooner, if he knew that AMW's intent was to extract as much free labor from him as was possible.

65. Plaintiff has been damaged by AMW's representation.

66. Defendant's fraudulent misrepresentations are so egregious that the award of punitive damages is appropriate to deter Defendant and other similarly situated individuals and entities from similar conduct.

## VI.   **REQUESTED RELIEF**

WHEREFORE, Plaintiff, Admir Maglajlic, requests that judgment of this Court be held in his favor as follows:

1. Order AMW to pay Mr. Maglajlic all damages available under the FLSA and Indiana's Wage Claim Act, including all unpaid wages, all liquidated damages, injunctive relief, and any and all lost wages and the monetary value of all benefits associated with his employment;

2. Order AMW to pay Mr. Maglajlic's reasonable attorney fees and costs;

3. Order AMW to pay pre-judgment and post-judgment interest, as allowed by

law;

    4.    Enter a permanent injunction requiring the Defendants to file Internal Revenue Service forms W-2, W-3, and 943 reporting the Plaintiff's earnings while in the Defendants' employ during the years 2016-2017;

    5.    Award Plaintiffs any such further relief to which they may justly be entitled; and

    6.    Award to Mr. Maglajlic all other relief that is just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff, Admir Maglajlic, by counsel, demands a trial by jury on all issues deemed so triable.

                              BARRETT McNAGNY LLP

                              By: */s/James J. O'Connor, Jr.*
                                  James J. O'Connor, Jr., #23081-02
                                  215 East Berry Street
                                  P. O. Box 2263
                                  Fort Wayne, Indiana 46801
                                  Phone: (260) 423 9551
                                  Fax: (260) 423 8920
                                  E Mail: jjo@barrettlaw.com
                                  *Attorney for Plaintiff*